The executors of the will of Rita F. Berg appeal from a transfer inheritance tax levied upon the purchase on January 28, 1946 of a straight life annuity for $25,000 on the life of Mr. Wallace MacMurray and payable to him as an inter vivos transfer made in contemplation of death. Rita F. Berg died on August 5, 1947 at the age of 78. She had no children and her husband was confined in a mental institution. At the hearing before the Division of Taxation of the Department of Taxation and Finance the decedent's attending physician, Dr. Charles E. Jones, testified that decedent had been under his care for secondary anemia for about three years, that she responded well to treatment, that the anemia was controllable in a person of her years, that her health was good but that she had a certain amount of arteriosclerosis which was a contributing factor in a person of her years but not sufficiently advanced to warrant treatment, that she was able, up to the time of her death, to go to New York for the weekly concerts of the Philharmonic Society during the season, that she took automobile rides, walked in her garden and conversed generally in an intelligent manner. He described her as mentally alert, clear and concise, as one who read the classics and discussed musical techniques clearly and intelligently. He did not consider the anemia a contributory cause of the cerebral hemorrhage which caused her death. *Page 267 
Mr. A.W. Ballentine, Trust Officer of the First National Bank 
Trust Company, testified that he had known Mrs. Berg for 20 years; that he had discussed business matters with her practically once a week and that from 1944 until her death she handled a trust for her husband, amounting to approximately $450,000. The relationship between the decedent and Mr. Ballentine was a cordial, friendly one. In 1945 the decedent told him of her acquaintanceship with Mr. MacMurray, who was the organist of St. James Church in Montclair, an instructor in English literature in a New York college and an accomplished musician. In December 1945 they discussed the services that Mr. MacMurray was performing for her. These consisted of his coming out to Nutley several times a week; talking over the weekly Philharmonic concerts; playing excerpts from the forthcoming programs and discussing them with her. They also read together and discussed literary works. He testified that the decedent felt that Mr. MacMurray should be compensated in some way for the time that he was spending and discussed the method of doing so with Mr. Ballentine. His specific testimony is that "She felt that Mr. MacMurray should continue his studies or his work and he should be paid for what he was doing for her, because it was a loss of income there which would affect his being able to devote to his ordinary work the time that he was giving to her; that there was a loss of income to him or a possible future income." It was upon his recommendation that she purchased the annuity policy payable at the rate of $115 a month. He described her condition as good one week prior to the onset of the cerebral hemorrhage. In fact, he said that he did not notice any physical change in her condition prior to the time of the making of the gift in question, except that as years went by, she simply lived a little more leisurely.
Mr. MacMurray testified that during the years 1945-46-47 he was in her company almost daily, and detailed the nature of their discussions as heretofore indicated. He described her as being in excellent health up to about four weeks before her death. He described the taking out of the annuity policy as "in the nature of a scholarship" and said "She felt that I could *Page 268 
have done something if I were left free to do it. She felt I could do something and she wanted to make it possible." Some ten months after taking out the aforementioned policy, the decedent executed a will in which she gave $50,000 and personal property to the extent of $1,000 to him.
A tax was assessed against the value of the annuity policy under R.S. 54:34-1c — "a transfer by * * * gift made without adequate valuable consideration and within two years prior to the death of the * * * donor of a material part of his estate * * * shall in the absence of proof to the contrary, be deemed to have been made in contemplation of death * * *."
The burden of proof of taxability is upon the State but where the gift is made less than two years prior to the donor's decease, a presumption arises that the gift is made in contemplation of death, and the burden is then on the taxpayer to go forward with evidence to rebut the presumption. Cairns v.Martin, 130 N.J. Eq. 313 (Prerog. 1941). In CentralHanover Bank Trust Co. v. Martin, 129 N.J.L. 127 (E. A.
1942) it was said "that the test of a gift in contemplation of death in the statutory sense is whether the determinative motive was `of the sort which leads to testamentary disposition.' It is requisite that the `thought of death' be the impelling cause of the transfer. If that be a controlling motive inducing the disposition of the property, the transfer is taxable under the statute. * * * The inquiry therefore is whether the gift was essentially testamentary in character. Was it made as a substitute for testamentary disposition? Was the generating thought of death as distinguished from purposes associated with life?"
The testimony in this case reveals that the decedent was a person of capability and one with a keen interest in cultural subjects, and the companionship between the decedent and Mr. MacMurray was a source of enjoyment to her. Furthermore, she appreciated that the time which he devoted to her deprived him of time which he might otherwise put to his own use. It is consistent with the relationship that the decedent should make this gift in order to permit the recipient to realize upon *Page 269 
his potentialities. Bearing in mind that the important factor in determining taxability is the donor's motive for the gift and finding, as we do, that the motivating thought which prompted the gift was to give assurance to the donee of a sense of financial security, both present and future, and thereby allow him greater freedom of action in his chosen fields, relieved of some pressure from the struggle of maintaining himself, we hold that the gift was not made in contemplation of death. The choice of an annuity admirably serves to carry into effect that purpose.
The assessment is set aside.